UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———————————————

JOHN LECHNER,

        Movant,

                                        Case No. 2:16-CV-270
v.                                        (Criminal Case No. 2:11:CR:49)

UNITED STATES OF AMERICA,        HON. GORDON J. QUIST

        Respondent.
_____/

## **OPINION**

Pursuant to 28 U.S.C. § 2255, John Lechner moves to vacate, set aside, or correct his sentence. The Government has filed a response, and Lechner has replied. After reviewing the motion, briefs, and supporting documents, the Court will deny the Motion.[1]

## **I. BACKGROUND**

On October 4, 2011, a six-count indictment was filed against Lechner charging him with: (1) possession of explosives while under indictment, in violation of 18 U.S.C. § 842(i)(1); (2) transportation of explosive materials without a permit or license, in violation of 18 U.S.C. § 842(a)(3)(A); (3) distribution of explosive materials and distribution of explosive materials to a convicted felon, in violation of 18 U.S.C. §§ 842(a)(3)(B) and 842(d)(2); (5) improper storage of explosive materials, in violation of 18 U.S.C. § 842(j); and (6) making a false statement to a law enforcement officer, in violation of 18 U.S.C. § 1001(a)(2). (Case No. 2:11-CR-49 (hereafter CR), ECF No. 14.) Lechner pled guilty to possession of explosives while under indictment (CR, ECF No.

---

[1]Although Lechner had completed the custodial portion of his sentence at the time he filed his § 2255 Motion, he is still considered "in custody" for purposes of § 2255 because he remains on supervised release. *Maleng v. Cook*, 490 U.S. 488, 491, 109 S. Ct. 1923, 1925 (1989); *see United States v. Zack*, No. 98-1526, 1999 WL 96996, at *1 (6th Cir. Feb. 1, 1999) ("A defendant serving a term of supervised release is 'in custody' for purposes of § 2255.").

36). The magistrate judge subsequently granted Lechner's motion to withdraw his plea. (CR, ECF No. 56.) On April 10, 2012, the Government filed a superseding indictment charging Lechner with: (1) two counts of improper transportation of explosive materials; (2) two counts of improper storage of explosive materials; (3) possession of explosives while under indictment; (4) making a false statement to a law enforcement officer; (5) distribution of explosive materials; and (6) distribution of explosive materials to a convicted felon. (CR, ECF No. 61.)

Initially, attorney Paul A. Peterson was appointed to represent Lechner. However, early in the case, Lechner retained an attorney, Charles W. Malette, who represented Lechner during the plea process. After Lechner withdrew his plea and the superseding indictment was filed, attorney Malette was permitted to withdraw and attorney Peterson was re-appointed to represent Lechner.

The case was tried to a jury over four days before Judge Allan Edgar. The Sixth Circuit summarized the pertinent facts as follows:

> In 2003, Lechner, a Michigan farmer and quarry owner, received a three-year explosives permit even though the [Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)] had not approved his storage facilities. He then bought two tons of ammonium nitrate/fuel oil ("ANFO"), a highly explosive chemical mixture frequently used for blasting rock quarries.
> In 2010, Lechner rented out a house on part of his farm. The renter soon discovered two pallets loaded with 80 bags of ANFO in a nearby barn, and was concerned it was not being stored safely. In November 2010, Lechner moved this ANFO to a detached garage at another residence he owned on Blalock Row. The renter photographed Lechner loading the ANFO onto a truck and reported him to the Michigan State Police.
> In an unrelated incident in July 2011, Lechner got into a confrontation with police that stemmed from a property dispute with his former wife. The county prosecutor charged Lechner with three felonies. Lechner attended a preliminary hearing on September 13, 2011, and the charges were bound over for trial.
> Meanwhile, on another occasion in September 2011, Lechner appeared in state court concerning a ticket his son had received. An incident in the courtroom led to Lechner's being held in contempt and sentenced to thirty days in jail.
> While Lechner was in jail, two ATF agents interviewed him. They asked Lechner about some ANFO they knew he had purchased. He told them he had used it all up. As he later testified, Lechner was trying to prevent the agents from finding and destroying the ANFO because it had cost him a lot of money.

> When he got out of jail, Lechner contacted his friend and sometimes-employee, Billy Jo Verette. Lechner asked Verette to help him move the ANFO from the Blalock Row residence to Verette's mother's shed. Verette called the local authorities. They gave Verette a hidden recording device and contacted ATF. Then, as the recording device ran, Verette helped Lechner move the 80 bags of ANFO.
>
> At one point as they loaded the ANFO onto a horse trailer, Lechner told Verette the ANFO had to be stored "according to federal regulations." Lechner said he didn't "know what the f* *k those [regulations] are," but that "just because you don't know doesn't mean that you don't have to store it that way."
>
> As they unloaded the ANFO, Verette asked Lechner if he had any "big plans for this stuff." Lechner responded, "Yeah . . . When there's a revolution here. . . . When the people decide to take the government back . . . me and you will be . . . mercenaries." Although Lechner later testified that this was a joke, Verette testified that Lechner was not laughing. After Lechner left, agents seized the ANFO. The next day, agents searched the attics of two houses associated with Lechner and found blasting caps in one attic and blasting caps, boosters, and detonating cord in the other.

*United States v. Lechner*, 806 F.3d 869, 872–73 (6th Cir. 2015). At the conclusion of the trial, the jury found Lechner guilty of transportation of explosive materials without a permit (Counts 1 and 6); improper storage of explosives (Counts 3 and 9); possessing explosives while under indictment (Count 4); and making a false statement to a law enforcement officer (Count 5). The jury acquitted Lechner of the distribution charges (Counts 7 and 8). (CR, ECF No. 133.)

Judge Edgar sentenced Lechner to 51 months imprisonment on Counts 1, 4, 5, and 6, and 12 months on Counts 3 and 9, to run concurrently, and three years of supervised release. (CR, ECF No. 151 at PageID.702–03.) Following imposition of the sentence, Lechner, through his counsel, filed a motion for a new trial based on "newly discovered evidence." This evidence consisted of ATF regulations that Lechner said were not available to him while he was in the Marquette County jail awaiting trial. (CR, ECF No. 152 at PageID.709–710.) Judge Edgar denied Lechner's motion because Lechner failed to specify the regulations or explain how they were material to his case, and the regulations likely did not qualify as evidence. (CR, ECF No. 154.)

Lechner appealed his convictions to the United States Court of Appeals for the Sixth Circuit, which affirmed in a published opinion issued on July 29, 2015. The Sixth Circuit rejected Lechner's arguments that: (1) his convictions for transporting explosives in violation of 18 U.S.C. § 842(a)(3)(A) were invalid because the regulation, 27 C.F.R. § 555.205(d), conflicted with the statute, rendering it vague and requiring application of the rule of lenity, and Lechner was entrapped by his reliance on the regulation, *id.* at 874–76; (2) his possession, storage, and transportation of explosives, of which he was convicted, lacked a nexus to interstate commerce, *id.* at 876–77; (3) his conviction for possessing explosives while under indictment was invalid because the district court failed to instruct the jurors that they had to find that Lechner knew he had been indicted and the statute made compliance impossible, *id.* at 878–80; (4) the instructions were deficient because they failed to elaborate on the applicable ATF regulations Lechner allegedly violated, *id.* at 880–82; and (5) his statement to ATF agents that he had used up all of the ANFO was not material, *id.* at 883. The Sixth Circuit issued its mandate on December 14, 2015. Lechner did not file a petition for writ of certiorari with the United States Supreme Court. Lechner filed the instant § 2255 Motion on December 7, 2016, within the applicable statute of limitations. 28 U.S.C. § 2255(f)(1).

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2255(a), a prisoner in the custody of the United States may seek collateral relief from a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Sixth Circuit has held, however, that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456

U.S. 152, 167–68, 102 S. Ct. 1584, 1594 (1982)). Ineffective assistance of counsel claims are generally not reviewable on direct appeal, but instead must be raised in a motion under § 2255. *United States v. Quinlan*, 473 F.3d 273, 280 (6th Cir. 2007) (citing *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693 (2003)). Lechner argues that his counsel rendered ineffective assistance in a number of respects.

Ineffective assistance of counsel claims are analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, a defendant must show deficient performance—his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* A defendant must show that "counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2064–65. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 1854 (2002) (internal quotation marks omitted). Review of counsel's performance must thus be "highly deferential," and the court must avoid the temptation "to second-guess counsel's assistance after conviction or adverse sentence." *Strickland* 466 U.S. at 689, 104 S. Ct. at 2065. *See also United States v. Valerio*, 676 F.3d 237, 248 (1st Cir. 2012) (noting that "Monday morning quarterbacking of trial tactics . . . is insufficient to sustain an ineffective assistance of counsel claim" (internal quotation marks omitted)). Moreover, a defendant's burden of overcoming the general presumption is even greater when counsel's conduct involves "strategic decisions," which are viewed as "virtually unchallengeable." *Logan v. United States*, 434 F.3d 503, 510 n.1 (6th Cir. 2011).

Second, the defendant must demonstrate prejudice, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Moreland v. Robinson*, 813 F.3d 315, 329 (6th Cir. 2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067)). Rather, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 562 U.S. at 104, 131 S. Ct. at 787–88 (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064)). A court may deny an ineffective assistance claim solely on the prejudice prong if lack of prejudice is apparent. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

**A.      § 2255 Motion**

   **1.      Indicted Under False Pretenses**

Lechner first argues that his counsel was ineffective for failing to argue or show that the State of Michigan criminally charged Lechner "under complete and utter false pretenses" in order to provide the Government a basis to charge Lechner with possession of explosives while under indictment. (ECF No. 1 at PageID.6.) Lechner says that his counsel knew that the state prosecutor filed the state charges only to assist the Government in filing a federal charge against Lechner. As proof that the state charges were false and without basis, Lechner points to the fact that the state prosecutor dismissed the state charges following Lechner's sentencing on the federal charges. (*Id.* at PageID.6–7.) The Court first notes that such dismissals are fairly common—*i.e.*, the State of Michigan has little incentive to pursue criminal charges once a person is convicted in federal court.

Furthermore, Lechner offers no evidence or analysis to show why the state charges were false or baseless, but instead relies entirely on argument and innuendo. At trial, Brian Peppler, the county prosecutor, testified that in July 2011, he filed a two-count criminal complaint against Lechner charging him with larceny by false pretenses and resisting/obstructing a police officer, both of which were felonies. (CR, ECF No. 165 at pageID.1119–20.) Peppler said that a preliminary examination was conducted in August 2011, at which Lechner was present, and Lechner was bound over on both charges. (*Id.* at 1120–21.) Pepper further testified that he authorized a separate criminal complaint charging Lechner with false report of a felony, on which Lechner was also bound over for trial. (*Id.* at 1121–22.) All of the charges remained pending as of the time of trial. (*Id.*) In light of Peppler's testimony that the state district court found probable cause to bind Lechner over for trial, Lechner's counsel had no basis to argue that the state charges were a "sham," even if those charges were dismissed after Lechner was sentenced on the federal charges. The fact is that Lechner was under indictment for the charged offenses at the time he moved the ANFO in September 2011. Because "[t]he Sixth Amendment does not require counsel to . . . press meritless arguments before a court," *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993), Lechner's counsel was not deficient for failing to argue that the state charges were false or unfounded. *See O'Hara v. Brigano*, 499 F.3d 492, 505 (6th Cir. 2007) (noting that counsel could not have been ineffective for withdrawing his motion to suppress because he lacked evidence that the petitioner's statement to police officers was coerced).

Lechner also argues that his trial counsel was ineffective for failing to argue that Lechner did not know he was "under indictment" because the state district court did not use the word "indictment" and simply said that Lechner was "'Bound' over." (ECF No. 1 at PageID.8.) Michigan law does not require indictments to charge felony or misdemeanor crimes. A state district

judge can simply find probable cause to proceed with a charge, and then the defendant is "bound over" to state circuit court for trial. This argument is specious also because, as the Sixth Circuit noted, "there was uncontroverted proof [including Lechner's own testimony] Lechner knew he was under indictment." *Lechner*, 806 F.3d at 878. Moreover, contrary to Lechner's argument, his counsel did argue to the jury that Lechner "didn't believe that he was under indictment." (CR, ECF No. 166 at PageID.1686.) *See Lechner*, 805 F.3d at 878.

### 2. Lechner's Permit Status

Lechner argues that his counsel was ineffective for failing to argue that he had a valid permit to transport explosives between 2003 and 2006 and was not required to renew his permit to transfer explosives (which he had previously purchased under his prior valid permit) in 2010 and 2011 because he sold or transferred his business to his son, Mark Lechner. But, as the Government notes, whether Lechner had a valid permit for the period 2003–2006, when he purchased the ANFO, is irrelevant, because it is undisputed that Lechner did not have a permit in 2010 or 2011 to transport the ANFO. In fact, the Sixth Circuit "assume[d] without deciding that Lechner's facially valid permits enabled him to lawfully acquire explosives from 2003 to 2006," *id.* at 874 n.1, but nonetheless upheld his conviction for unlawfully transporting explosives without a permit because "Section 842(a)(3)(A) . . . [makes] perfectly clear[] [that] [a] person without a license or permit is forbidden from transporting explosives." *Id.* at 875. As such, this argument fails on both prongs of the ineffective assistance analysis.

### 3. ATF's Failure to Examine Lechner's Storage Area

In his next argument, Lechner contends that his counsel was ineffective for failing to point out or establish that the ATF never inspected Lechner's storage facilities, even though it was authorized to do so. As the Court understands it, Lechner contends that, had the ATF inspected his

facilities, Lechner would have been familiar with the applicable rules and regulations because the ATF would have explained the rules and regulations to him. In other words, Lechner argues that had his counsel pointed out to the jury that Lechner was not familiar with the applicable storage rules and regulations because the ATF failed to inform Lechner of them, the jury would have been unable to convict Lechner of violating rules of which he was not aware.

This argument lacks merit. Lechner cites no law imposing a duty on the ATF to inform a permittee of the applicable rules and regulations and relieving the permittee of criminal liability in the absence of such information from the ATF. In fact, the law imposes an obligation on persons dealing with explosives to be aware of the applicable regulations. *See United States v. Collins*, 756 F. Supp. 1253, 1256 (W.D. Mo. 1991) ("Proper storage of explosives is a type of conduct that a reasonable person should know is subject to stringent public regulation.") (internal quotation marks and ellipses omitted). Moreover, the application that Lechner completed for his permit specifically warned that is unlawful for any person to store any explosive material in a manner contrary to the applicable regulations and required the applicant to read and be familiar with the requirements set forth in 27 C.F.R., part 55, subpart K. (CR, ECF No. 165 at PageID.1374–75.) Finally, the evidence at trial showed that Lechner was aware that regulations existed, but chose not to consult them. *Lechner*, 806 F.3d at 875–76. Accordingly, Lechner's counsel was not ineffective for failing to raise a frivolous argument that Lechner should not be found guilty because he chose to disregard the applicable storage regulations.

### 4. Intimidation of Lechner's Witness

Lechner next argues that the Government interfered with his right to present testimony from a witness—Lechner's son, Mark Lechner—through intimidation. The alleged intimidation is a letter from the Government notifying Mark Lechner that he was a target of an investigation and advising

him to retain an attorney. According to Mark Lechner, he did not testify or even attend the trial because he was afraid of being arrested. (ECF No. 1-1 at PageID.46.) Lechner argues that his trial counsel should have notified the Court of the circumstances and told the jury why Mark Lechner was not testifying.

When a defendant alleges ineffective assistance in failing to address government intimidation of a witness, the defendant must show that the outcome of the trial would have been different had the witness testified. *See Whiteside v. Warden, S. Ohio Corr. Facility*, No. 2:10-cv-816, 2012 WL 3637369, at *8 (S.D. Ohio Aug. 22, 2012) (citing *Clemons v. Luebers*, 381 F.3d 744 (8th Cir. 2004)). Here, Lechner cannot make that showing. In the relevant portions of his affidavit, Mark Lechner states:

> 2. My father sold me his company which we registered with the County. At that time we both knew since John was issued the permit to purchase the explosives that he could move them and use them. It was understood that if a job called for their use only he would be able to use them as he legally purchased them. When we needed additional supplies I would have to apply for a permit.
>
> . . . .
>
> 6. I was prepared to testify about the facts of the events that took place, that my father was always under the assumption that he could possess the explosives because the ATF sent him a permit to purchase them. That he was under the assumption that if he ever wanted to purchase additional explosives he would simply have to renew his permit but he could retain what he purchased because he was given permission to do so.
>
> He also felt that he understood the rules and regulations to the best of his knowledge and always tried to maintain proper storage and movement of the explosives.

(ECF No. 1-1 at PageID.45–46.)

There is no reasonable likelihood that Mark Lechner's testimony would have resulted in a different outcome at trial. First, whether Lechner sold his business to his son is irrelevant. Lechner transported explosives without a permit and failed to store them in accordance with the regulations.

Ownership of the construction company had no bearing on the charges. Second, the Sixth Circuit made clear that, even if Lechner had initially acquired the ANFO under a valid permit, he lacked a permit in 2010 and 2011 when he transported the ANFO, thereby violating the law. Finally, regardless of whether Lechner "felt that he understood the rules and regulations," as the Sixth Circuit noted, the Government's "expert identified six ways Lechner violated the regulations, and Lechner presented no evidence or argument that he was in compliance." *Lechner*, 806 F.3d at 882.

     5.     **Sale of Lechner's Company**

Lechner next argues that his counsel was ineffective for failing to introduce evidence that he sold his company to his son, Mark. As noted above, any sale of the company was irrelevant to the issues in the case. Accordingly, Lechner can show neither deficient performance by his counsel nor prejudice.

     6.     **Presentation of Testimony**

Lechner raises several arguments as to why his counsel was ineffective in the presentation of Lechner's testimony and that of Lechner's ex-wife, Robin Lechner. All lack merit.

Initially, the Court notes that Lechner "readily admits that he knowingly and intentionally opted to testify at the trial on his own behalf." (ECF No. 1 at PageID.23.) Lechner's counsel informed the court that he had advised Lechner against testifying several times, including in writing, but Lechner insisted on testifying. (CR, ECF No. 166 at PageID.1478–79.) Counsel also indicated concerns with the relevancy of the topics Lechner proposed to present and explained to Lechner possible pitfalls of testifying, including opening himself up to cross-examination and making admissions. (*Id.* at PageID.1479.)

Lechner first argues that his counsel was ineffective for failing to establish through Lechner's testimony that Lechner did not understand he was under indictment in the state court

11

because the word indictment was never used in the state court proceedings. Lechner argues that his counsel should have provided the transcripts and record from the state-court proceeding to show the jury that Lechner was never told he was being "indicted" and he was not aware of such fact. Lechner cannot show a reasonable probability that the outcome of the trial would have been different if his counsel had elicited such testimony from Lechner. As the Sixth Circuit noted, "there was uncontroverted proof that Lechner knew he was under indictment. The state charges were filed against Lechner months before he was interviewed by ATF agents. Lechner admitted he attended the hearing on these charges and he 'guess[ed]' he had been 'bound over." *Lechner*, 806 F.3d at 878. Moreover, the Sixth Circuit also observed that knowledge of the indictment was not necessarily required. *Id.*

Lechner next faults his counsel for failing to use a question and answer format and instead allowing Lechner to present his testimony in narrative form. Although Lechner's counsel asked for some leeway in allowing Lechner to talk "more narratively than I would normally do," Judge Edgar informed counsel that "[w]e have to do question and answer." (CR, ECF No. 166 at PageID.1479–80.) Although some of Lechner's answers were quite lengthy, Lechner's counsel in fact followed a question and answer format, as Judge Edgar required. (*Id.* at PageID.1524–84.) Lechner fails to demonstrate that he was prejudiced in any manner.

Lechner also argues that his counsel was ineffective in his examination of Robin Lechner. In particular, he criticizes his counsel for failing to "ask the million dollar question" about receiving letter from the ATF advising that he needed to have his storage facility inspected. (ECF No. 1 at PageID.25.) As set forth above, however, whether Lechner had a valid permit when he acquired the ANFO was not relevant, as it was undisputed that Lecher did not have a valid permit in 2010 or

2011 when he transported the ANFO and unlawfully stored it. Thus, the so-called "million dollar question" was irrelevant and cannot establish ineffective assistance.

Finally, Lechner argues that his counsel was ineffective for not supporting Lechner's claim that he sold the construction business to his son, Mark Lechner, by introducing evidence of the sale. As discussed above, whether Lechner sold or transferred his business to his son was irrelevant to whether Lechner unlawfully transported and stored the ANFO at issue. *See Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2001) ("Counsel is not required by the Constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation."). Moreover, to the extent Lechner argues that his counsel's failure to substantiate his claim impaired his credibility with the jury, Lechner fails to demonstrate prejudice. Credibility was not an issue because Lechner admitted the facts need to establish the elements of the offenses.

### 7. Search of the Cedar Log Motel

Lechner argues that his counsel was ineffective for failing to file a motion to suppress evidence regarding a search of the Cedar Log Motel, which was owned by Lechner's ex-wife, Robin Lechner. Lechner argues that ATF agents performed an unauthorized search of the motel when they obtained his permission to search "because Lechner had no common authority or any right to be on the property himself much less give authority to search one that does not belong to him." (ECF No. 1 at PageID.27.)

The United States Supreme Court has observed that counsel's failure to file a motion to suppress evidence "does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 2587 (1986). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must . . . prove that his Fourth Amendment claim is meritorious and . . . a reasonable

13

probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375, 106 S. Ct. at 2583.

Lechner's argument fails because a motion to suppress based on the search of the Cedar Log Motel would have been meritless, if not frivolous. AFT agents searched the motel twice—on September 8, 2011 and September 22, 2011. Prior to the first search, the agents obtained written consent from Robin Lechner. (CR, ECF No. 165 at PageID.1295.) Prior to the second search, the agents obtained written consent to search from Lechner. (CR, ECF No. 164 at PageID.1072.) If, as he now claims, Lechner lacked an interest in the motel and had no authority to consent to a search, a motion to suppress would have failed because Lechner would have lacked standing to contest the search. To assert a Fourth Amendment violation, a defendant must show that he had a legitimate expectation of privacy in the premises searched. *Minnesota v. Carter*, 525 U.S. 83, 91, 119 S. Ct. 469, 474 (1998). A motion to suppress would have failed on this ground alone. Moreover, Lechner cannot demonstrate prejudice because neither search produced any evidence that was admitted at trial. (CR, ECF No. 164 at PageID.1073–74; ECF No. 165 at PageID.1237.)

### 8. Commerce Clause

Lechner next argues that his counsel was ineffective for failing to argue that 18 U.S.C. § 842 is unconstitutional because possessing, transporting, and storing explosives wholly intrastate does not affect interstate commerce. The Sixth Circuit rejected Lechner's Commerce Clause argument on direct appeal, noting that Congress has authority to regulate explosives, "just as Congress heavily regulates drugs and firearms." *Lechner*, 806 F.3d at 876. The court observed: "Congress's comprehensive regulation of explosives—like its regulation of firearms and drugs—is permissible because the misuse of such material, especially when transported on highways, has a substantial

14

effect on interstate commerce." *Id.* at 876–77. Lechner's trial counsel was not ineffective for failing to make an argument that was rejected on direct appeal.[2]

### 9. Jury Instructions

Lechner argues that his counsel was ineffective for joining the Government in providing the jury prejudicial instructions. In particular, Lechner complains that the instruction concerning improper storing of explosive materials should have set out the text of the regulation governing storage of explosive materials. (ECF No. 1 at PageID.31–32.) Lechner argues that the failure to include the regulations in the instruction deprived the jury of the ability to determine which regulations Lechner violated.

In order to succeed on this claim, Lechner must show that "(1) the jury instructions given were inadequate, (2) counsel's failure to object was objectively unreasonable, and (3) different instructions would have so likely changed the outcome of the trial that the result is unreliable." *Jacobs v. Sherman*, 301 F. App'x 463, 466 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). Lechner cannot establish these requirements. First, Lechner cites no authority for the proposition that a jury instruction must set forth the text of a regulation, instead of the regulation being put before the jury by a competent witness. Thus, Lechner fails to show both that the agreed-upon instruction was inadequate or that his counsel's failure to object to the instruction was objectively unreasonable. Lechner also cannot demonstrate prejudice—that different instructions containing the text of the regulations likely would have change the outcome of the trial. The Sixth Circuit noted that the Government's expert, Margaret Carvill, testified about the various ways in which Lechner violated the regulations, and her testimony was supported by other evidence,

---

[2] The jury found that the explosives Lechner possessed were manufactured outside Michigan and, therefore, had been transported in interstate commerce. *Lechner*, 806 F.3d at 876.

including photographs. *Lechner*, 806 F.3d at 881–82. Given this evidence, it is difficult to imagine how inclusion of the regulations in the improper storage jury instruction could have possibly changed the outcome of the trial, particularly in light of undisputed evidence showing that Lechner failed to comply with the storage regulations.

**10.    ANFO as Dangerous Stand Alone Product**

Lechner agues that his counsel was ineffective for failing to establish that the ANFO Lechner possessed was not dangerous as a stand-alone item. This argument lacks merit, as ammonium nitrate explosive mixtures are specifically identified as explosive materials that may not be transported without a permit or a license. 75 Fed. Reg. 70,291.

**11.    Sentencing Issues**

Lechner also argues that his counsel was ineffective with regard to a number of sentencing issues. As noted above, Lechner finished serving the custodial portion of his sentence prior to the time he filed his § 2255 Motion. Although Lechner satisfies the "in custody" requirement of § 2255 because he is still on supervised release, he must also satisfy Article III's requirement of a live case or controversy.

A case is moot if it becomes "impossible for the court to grant any effectual relief whatever." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 449 (1992) (internal quotation marks omitted). A defendant's release from custody generally renders challenges to the custodial portion of the sentence moot. *See United States v. Lewis*, 166 F. App'x 193, 195 (6th Cir. 2006) ("This court can grant no meaningful relief regarding Lewis's custodial service because the sentence has already been served."). Although Lechner's challenges relating to his convictions still satisfy the case or controversy requirement because continuing adverse consequences are assumed, "this presumption does not apply [to the custodial portion of a sentence] and [Lechner] must point

to some other continuing adverse consequence." *United States v. Perotti*, 702 F. App'x 322, 323 (6th Cir. 2017) (citing *Spencer v. Kamna*, 523 U.S. 1, 8, 118 S. Ct. 978, 983 (1998)). "[A]n increased sentence in a potential future criminal proceeding is insufficient" to confer jurisdiction. *Id.* at 323–24 (citing *Lane v. Williams*, 455 U.S. 624, 632, 102 S. Ct. 1322, 1327 (1982)).

Lechner fails to identify any continuing adverse consequence from the now-discharged custodial portion of his sentence, and none is immediately apparent to the Court. Accordingly, Lechner's claims of ineffective assistance based on sentencing issues are moot.

**B.      Motion for Discovery**

Lechner has filed a motion captioned "Defendants [sic] Motion Under 28 U.S.C. Section 2255," in which he requests that the Court serve his proposed interrogatories upon his former counsel and issue an order compelling the ATF to tender discovery. Lechner's request for discovery is governed by Rule 6 of the Rules Governing Section 2255 Proceedings, which provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a), Rules Governing Section 2255 Proceedings. Because, as set forth above, the Court can resolve all of Lechner's claims without discovery or an evidentiary hearing, and the Court has concluded that Lechner's claims are meritless, Lechner's motion for discovery will be denied. *See United States v. Spann*, No. 04-758, 2009 WL 2018508, at *5 (E.D. Pa. July 9, 2000) (denying the request for discovery because the § 2255 motion was meritless).

**C.      Certificate of Appealability**

Having concluded that Lechner is not entitled to relief, the Court must next determine whether a certificate of appealability should issue under 28 U.S.C. § 2253(c)(2). A certificate should issue if the movant has demonstrated a "substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000); *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court concludes that reasonable jurists could not find this Court's conclusion that Lechner is not entitled to relief debatable or wrong. Therefore, the Court will deny Lechner a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court will deny Lechner's § 2255 Motion and Motion for Discovery and deny Lechner a certificate of appealability.

A separate order will enter.


Dated: June 15, 2018 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE